UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shakopee Mdewakanton Sioux
(Dakota) Community and Grand
Portage Band of Chippewa Indians,
federally recognized Indian Tribes,

                Plaintiffs,

v.                                  **MEMORANDUM OPINION
AND ORDER**
Civil No. 01-1737 ADM/AJB

Mike Hatch, Minnesota Attorney General,
David F. Fisher, Commissioner of the
Minnesota Department of Administration,
and Charles R. Weaver, Jr., Commissioner
of the Minnesota Department of Public Safety,

                Defendants.

___

Steven F. Olson, Esq., and Greg S. Paulson, Esq., Bluedog, Olson & Small, P.L.L.P., Bloomington, Minnesota, appeared for and on behalf of the Plaintiffs.

John S. Garry, Esq., Assistant Attorney General, St. Paul, Minnesota, appeared for and on behalf of the Defendants.

___

## I. INTRODUCTION

On March 7, 2002, the undersigned United States District Judge heard Cross-Motions for Summary Judgment by Plaintiffs Shakopee Mdewakanton Sioux (Dakota) Community and Grand Portage Band of Chippewa Indians (the "Tribes") [Doc. No. 25], and Defendants Mike Hatch, Minnesota Attorney General, David F. Fisher, Commissioner of the Minnesota Department of Administration, and Charles R. Weaver, Jr., Commissioner of the Minnesota Department of Public Safety (the "State") [Doc. No. 17]. Also before the Court is the Tribes' Appeal [Doc. No. 42] of Magistrate Judge Arthur J. Boylan's Order of February 21, 2002 [Doc.

FILED JUN 2 0 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

No. 38], denying the Tribes' Motion to appoint independent legal counsel for Defendant Weaver. For the reasons set forth below, the State's motion is granted and the Tribes' motion is denied.

## II. BACKGROUND

The genesis of this dispute is a request by news organizations for copies of tribal-gaming audits the Tribes submitted to the Minnesota Department of Public Safety ("DPS"). The audit reports are required to be filed with the DPS pursuant to the Minnesota Tribal-State Compacts for Video-Gaming and Blackjack (the "Compacts"). The State argues that the open public records law, the Minnesota Government Data Practices Act ("MGDPA"), requires it to release such information to the public upon request. The Tribes, opposing any release of the audits to the public, argue that (1) releasing the audits would constitute a breach of the Compacts, (2) the MGDPA violates their due process rights, (3) federal law preempts the MGDPA, and (4) the State should be estopped from releasing the audits to the public.

The Tribes and the State entered the Video-Gaming Compacts in 1989 and the Blackjack Compacts in 1991. *See* Garry Aff. Exs. A & C (Video-Gaming Compacts), Exs. B & D (Blackjack Compacts). Both the Video-Gaming and Blackjack Compacts provide that the Tribes shall engage an independent certified public accountant to audit the books and records of tribal casino gaming action pursuant to the Compacts and that the Tribes "shall make copies of the audit and all current internal accounting and audit procedures available to the State upon written request." Garry Aff. Exs. A & C (Video-Gaming Compacts, § 6.11), Exs. B & D (Blackjack Compacts, § 6). For a number of years, the Tribes have submitted copies of gaming audits to the State under the Compacts. *See* Garry Aff. Exs. G & H.

In February, 2001, the publisher of the Native American Press/Ojibwe News, William J.

2

Lawrence, submitted a request to the DPS for copies of recent tribal-gaming audits received by the State from the Red Lake Band of Chippewa Indians. Two months later, the DPS denied the request on the ground that such audits contain nonpublic "trade secret information" and nonpublic "security information" under Minn. Stat. § 13.37. Lawrence then requested an advisory opinion from the Commissioner of the Minnesota Department of Administration ("Commissioner of Administration") concerning whether the DPS appropriately denied his request.

On June 6, 2001, the Commissioner of Administration issued Advisory Opinion 01-501, concluding that the DPS improperly denied the request for the Red Lake tribal-gaming audits because the public is entitled to access such data under the MGDPA. *See* Garry Aff. Ex. M. In Advisory Opinion 01-501, the Commissioner of Administration determined that the language of the tribal-state gaming compact was insufficient to satisfy the requirement of reasonable efforts to maintain secrecy of the audits to qualify as "trade secret information" under Minn. Stat. § 13.37. *Id.* at 3-4. Following the issuance of Advisory Opinion 01-501, other news organizations submitted requests to the DPS for copies of all tribal-gaming audits received by the State. On June 19, 2001, the DPS sent notice that copies of all previous audits would be released on June 28, 2001, unless there was a temporary classification of the audits as nonpublic or a court order barring the release.

On June 19, 2001, the DPS also sent notice to the Tribes, informing the Tribes that copies of their audits would be released on June 28, 2001, based on Advisory Opinion 01-501. *See* Garry Aff. Exs. P & Q. Shortly thereafter, the Tribes submitted letters to the DPS, setting forth the Tribes' legal arguments contesting public release of the audits. *See* Garry Aff. Exs. S & T.

3

The DPS then applied to the Commissioner of Administration for a temporary classification of the audits as nonpublic pursuant to Minn. Stat. § 13.06. The DPS notified the Tribes of this application for temporary classification and informed the Tribes that the audits would not be released pending a decision on the application. On August 3, 2001, the Tribes submitted their arguments to the Commissioner of Administration that Advisory Opinion 01-501 should be reversed and that the application for temporary classification of the audits as nonpublic should be granted. *See* Garry Aff. Ex. X, at 00190-00194.

On August 28, 2001, the Commissioner of Administration issued a decision approving the application for a temporary classification of the audits as nonpublic pursuant to Minn. Stat. § 13.06. *See* Garry Aff. Ex. X, at 00135-00142. The Tribes received notice of this temporary classification as nonpublic. As required by Minn. Stat. 13.06, subd. 5, the Commissioner of Administration submitted the record, including arguments submitted by the Tribes, and the decision to the Attorney General for review.

On September 14, 2001, the Attorney General issued a decision disapproving the temporary classification of the audits as nonpublic. *See* Garry Aff. Ex. Y. The Tribes received a copy of this adverse decision. The Tribes filed this action on September 20, 2001, seeking an order to prohibit the State from releasing the audits to the public. The State and the Tribes agreed to a temporary restraining order barring release of the audits pending further court order.

### III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

4

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## A. Breach of the Compacts

The Tribes claim the Tribal-State Compacts prohibit the State from applying the MGDPA to the gaming audits the Tribes submitted to the State. The Tribes contend that they did not expressly agree in the Compacts that the MGDPA would apply to the audits in the State's possession. To allow public access to such audits, the Tribes argue, would constitute a breach of the Compacts.

The MGDPA provides a regulatory framework for the collection, creation, storage, maintenance, dissemination and access to the government data maintained by state agencies and political subdivisions. *See* Minn. Stat. §§ 13.01- 13.99. The purpose of the MGDPA is to balance the rights of individuals to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing. *Montgomery Ward v. County of Hennepin*, 450 N.W.2d 299, 307 (Minn. 1990) (citing Gemberling & Weissman, *Data Privacy: Everything You Wanted to Know About the Minnesota Government Data Practices Act--From "A" to "Z"*, 8 Wm. Mitchell L. Rev. 573, 575 (1982)). The MGDPA establishes a presumption that all government data are public and are accessible to the public, unless otherwise classified by statute, by temporary classification under the MGDPA, or by federal law. *Id.* § 13.01, subd. 3. The MGDPA defines "government data" as "all data collected . . . received [or] maintained . . . by any state agency . . . ." *Id.* § 13.02, subd. 7.

The Compacts contemplate that gaming audit reports will be "collected" or "received" by

5

the State, thus triggering application of the MGDPA. Both the Video-Gaming and Blackjack Compacts explicitly provide that the Tribes shall engage an independent certified public accountant to audit the books and records of gaming action pursuant to the Compacts and that the Tribes "shall make copies of the audit and all current internal accounting and audit procedures available to the State upon written request." Garry Aff. Exs. A & C (Video-Gaming Compacts, § 6.11), Exs. B & D (Blackjack Compacts, § 6). Pursuant to these provisions, the Tribes have submitted the gaming audits to the State. *See* Garry Aff. Exs. G & H. Under the MGDPA, such documents received by the State are "government data," and thus accessible to the public unless otherwise classified by law.

The Compacts contain no language expressly prohibiting the application of the MGDPA to the gaming audits received by the State from the Tribes. The Blackjack Compacts implicitly recognize that state laws, such as the MGDPA, might be applicable, stating: "To the extent possible under state law, the State shall not disclose any information obtained pursuant to [a written request for audit copies]." Garry Aff. Exs. B & D (Blackjack Compacts, § 6). The Video-Gaming Compacts do not address, either explicitly or implicitly, the application of the MGDPA. *See* Garry Aff. Exs. A & C (Video-Gaming Compacts, § 6.11). Thus, one Compact implicitly acknowledges the application of the MGDPA, while the other Compact is silent on the application of the MGDPA. No Compact terms forbid application of the MGDPA or exempt the audits from the scope of the MGDPA.

The Tribes argue the Compacts are ambiguous with respect to the application of the MGDPA. The Tribes contend that when the Compacts use the terms "make available," they mean the audits do not become the property of the entity to which the audits are made available.

6

*See* Pl. Mem. in Supp., at 11. However, the applicability of MGDPA disclosure is activated by the State's receipt or possession of documents, without regard to the source or ownership of the documents. *See* Minn. Stat. § 13.02, subd. 7; § 13.03, subd. 1. The Tribes' proprietary argument thus misses the mark. The Tribes fail to identify any terms of the Compacts containing ambiguity with respect to the application of the MGDPA.

The question of whether the contract is ambiguous is a matter of law for the court. *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 959 (8th Cir. 2000); *Green Tree Acceptance, Inc. v. Wheeler*, 832 F.2d 116, 117 (8th Cir. 1987). "A contract term is ambiguous if it is reasonably susceptible to more than one interpretation." *Porous*, 220 F.3d at 959. When two reasonable arguments can be made for either of two contrary positions as to the meaning of a contract provision, an ambiguity exists. *See Home Ins. Co. v. Aetna Ins. Co.*, 236 F.3d 927, 929 (8th Cir. 2001). However, that each party asserts the Compacts support its position does not require a finding of ambiguity. *See McCormack v. Citibank, N.A.*, 100 F.3d 532, 538 (8th Cir. 1996).

There is no language in the Compacts prohibiting the application of the MGDPA to the gaming audits received by the State from the Tribes. Silence alone does not create an ambiguity. *See Ins. & Consulting Assocs., LLC v. ITT Hartford Ins. Group*, 48 F.Supp.2d 1181, 1192 (W.D. Mo. 1999) (finding no ambiguity where the only argument presented was the absence of a provision); *Jacobs v. Carsey-Werner Distrib., Inc.*, No. 93-6825, 1994 WL 116077, at *2 (S.D.N.Y. Mar. 30, 1994) ("There is little authority for the proposition that silence *per se* constitutes ambiguity."); *Aetna Life Ins. Co. v. American Nat'l Bank & Trust Co.*, 956 F.Supp.

7

814, 819-20 (holding that contract's silence on a subject did not render the contract ambiguous on that subject); *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F.Supp. 1504, 1515 (S.D.N.Y. 1989) (holding the absence of a provision prohibiting or allowing leveraged buy-outs could not, by itself, create an ambiguity); *Lewis v. Finetex, Inc.*, 488 F.Supp. 12, 14 (D.S.C. 1977) (finding silence insufficient to overcome statutory presumption directly bearing on the issue). The Compacts are unambiguous regarding the application of the MGDPA disclosure requirement: they do not exempt the audits from its scope.

The MGDPA is a neutral state law of general applicability. The U.S. Supreme Court has stated that "[a]bsent express federal law to the contrary," outside the reservations the Tribes are "subject to non-discriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-49 (1973). Even within the reservations, "state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Mescalero*, 411 U.S. at 148. Two appellate courts have held that application of a state's public-records law to information obtained from a tribe pursuant to a tribal-state gaming compact does not violate the compact where the compact either permits such application or is silent on the issue. *See Confederated Tribes of Siletz Indians v. Oregon*, 143 F.3d 481, 485 (9th Cir. 1998) ("To the extent the Compact specifically permits or prohibits the release of the Report, the parties are bound by it. Where the Compact is silent, however, neither IGRA, the Indian Commerce Clause, nor any other federal law prevents Oregon from releasing the report."); *Confederated Tribes of the Chehalis Reservation v. Johnson*, 958 P.2d 260, 267-69 (Wash. 1998) (holding that gambling

8

records obtained by state pursuant to tribal-state compacts were not exempt from disclosure under the terms of compacts or under public records act). The Tribes' breach of contract claim fails as a matter of law.

## B. Due Process

The Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The possession of a protected life, liberty, or property interest is a condition precedent to the government's obligation to provide due process of law. *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir. 1995). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The property interest must consist of "more than a unilateral expectation." *Id.* It must derive from "a legitimate claim of entitlement to it." *Id.* Property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

The Tribes argue that Minn. Stat. § 13.06, which permits an agency to apply for temporary classification of government data as nonpublic, violates procedural due process. A state statute or policy can create a constitutionally protected property interest when it both contains particularized substantive standards that guide a decision maker and limits the decision maker's discretion by using mandatory language. *See Jennings v. Lombardi,* 70 F.3d 994, 995-96 (8th Cir. 1995). A statute or policy that is merely procedural, or that grants discretionary

9

authority to a decision maker, does not create a protected property interest. *Id.* at 996. Because the decision on the public nature of submitted documents is discretionary, Minn. Stat. § 13 06 does not grant the Tribes a property interest in a temporary classification of the audits as nonpublic. Section 13.06 provides that only "the responsible authority of a state agency, political subdivision, or statewide system may apply" to the Commissioner of the Department of Administration for a temporary classification of data as nonpublic. Minn. Stat. § 13.06, subd. 1. The statute grants the Tribes no right to apply for the temporary classification. Moreover, section 13.06 gives the Commissioner of Administration discretionary authority to grant or deny the application, and gives the Attorney General discretionary authority to approve or disapprove the temporary classification as to form and legality. *Id.*, subd. 5. The statute does not give the Tribes a legitimate claim of entitlement to a temporary classification of the audits as nonpublic.

Even if the Tribes had an identifiable, protected interest, the State has not denied them the fundamental requirement of due process to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Tribes received notice of Advisory Opinion 01-501. After requests for the Tribes' audits became known, the Tribes were afforded the opportunity to submit written arguments to the DPS and the Commissioner of Administration in opposition to the public release of the Tribes' audits. The Commissioner of Administration included the Tribes' written arguments when sending its decision to the Attorney General for review. The Tribes received sufficient notice and opportunity to be heard prior to any deprivation of their alleged rights.

The "ordinary judicial process" of a state court action also may constitute sufficient procedure consistent with due process. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195 (2000). Minnesota law authorizes an action in state district court for an order preventing the State from violating the MGDPA. Minn. Stat. § 13.08, subd. 2; *see Doe v. Minnesota State Bd. of Med. Exam'rs*, 435 N.W.2d 45, 47 (Minn. 1989). The Tribes received written notice that the temporary classification was denied and that the audits would be released pursuant to Advisory Opinion 01-051 absent a court order. The Tribes have had sufficient time to bring a state court action under § 13.08 to prevent the release of the audits and to seek a determination of whether the audits constitute nonpublic "trade secret information" under Minn. Stat. § 13.37.[1] Other similarly aggrieved tribes have elected to and pursued their rights in state district court. *See Prairie Island Indian Cmty. v. Minnesota Dept. of Public Safety*, No. C5-01-8766, slip op. at 19-24 (Ramsey County Ct. Apr. 16, 2002). The MGDPA affords the Tribes a sufficient opportunity to heard in state court. No due process violation has occurred.

## C. Preemption by IGRA

The doctrine of preemption is based on the Supremacy Clause of Article VI of the United States Constitution. U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the contrary notwithstanding."). The Supremacy Clause invalidates state laws that

---

[1] This Court does not reach the question of whether the audits constitute nonpublic "trade secret information" and the merits of the Attorney General's advisory opinion under state law, as explained *infra*, § E.

11

interfere with or are contrary to federal law. *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 604 (1991); *Hillsborough County v. Automated Medical Labs, Inc.*, 471 U.S. 707, 712 (1985); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). The question, as argued by the Tribes, is whether any federal law preempts application of the MGDPA.

The Indian Gaming Regulatory Act ("IGRA") requires the National Indian Gaming Commission ("NIGC") to treat tribal-gaming audits as nonpublic, for purposes of the Freedom of Information Act ("FOIA"). *See* 25 U.S.C. § 2716(a); 5 U.S.C. § 552(b)(4), (7). However, neither the IGRA nor the FOIA preempt application of the MGDPA. Section 2716(a) applies only to data received by the NIGC. The FOIA applies only to records held by a federal government agency. 5 U.S.C. § 551(1), 552(a), (f). Indeed, "the plain language of the FOIA precludes its application to state or local agencies." *Mamarella v. County of Westchester*, 898 F.Supp. 236, 237 (S.D.N.Y. 1995). The IGRA and the FOIA do not prohibit application of the MGDPA to the audits because the federal classification applies only to data in the possession of the federal government, while the MGDPA governs data in the hands of any state agency. *See* Minn. Stat. § 13.02, subd. 7. There is no conflict between these two public records regimes.

Courts have concluded that federal law does not preempt state public records statutes. *See Siletz Indians*, 143 F.3d at 485-87; *Chehalis*, 958 P.2d at 270. In holding that federal preemption does not apply to the state public records law, the *Siletz Indians* court observed that "if the Report contained damaging information on the operation of [the casino] and the release of that Report [could] cause a decline in business, [such a possibility] is fully consistent with IGRA's goal of fair and honest gaming." *Siletz Indians*, 143 F.3d at 487. As in *Siletz Indians*

12

and *Chehalis*, the application of the MGDPA is not contrary to the goals of tribal self-government or tribal self-sufficiency. Federal law does not preempt application of the MGDPA in the instant case.

**D. Estoppel**

The public interest in the rule of law is undermined when the government is unable to enforce the law because of the conduct of its agents. *See Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 60 (1984). "[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler*, 467 U.S. at 63. Based on these principles, the government may not be estopped on the same terms as any other party. *Id.* In seeking to estop the State, the Tribes must establish the traditional elements of estoppel and that the government conduct in question amounts to "affirmative misconduct." *Chien-Shih Wang v. Attorney General of United States*, 823 F.2d 1273, 1276 (8th Cir. 1987).

The Tribes have presented no evidence of affirmative misconduct by the State. Instead, the Tribes argue that, as sovereigns, they should not be required to demonstrate affirmative misconduct to succeed on their estoppel claim against the State. The Tribes cite no authority for such a proposition. There are, however, cases holding that other sovereigns, such as the states, must show affirmative conduct when bringing an estoppel claim against the federal government. *See State of Washington v. Heckler*, 722 F.2d 1451, 1455 (9th Cir. 1984); *State of New Jersey v. Dept. of Health & Human Servs.*, 670 F.2d 1284, 1297-98 (3d Cir. 1982); *State of Michigan v. Schweiker*, 563 F.Supp. 797, 801 (D.C. Mich. 1983); *see also Pueblo of Santa Anna v. Kelly*, 932

F.Supp. 1284, 1299 (D. N.M. 1996) (rejecting argument that tribes were not required to show affirmative misconduct to state an estoppel claim against the federal government). Based on the aforementioned principles limiting estoppel claims against the government, the Tribes' estoppel claim against the State should be held to the same standard as a state's estoppel claim against the federal government.

Absent a demonstration of "affirmative misconduct" by the State, the Tribes' estoppel claim fails. *See Conforti v. United States*, 74 F.3d 838, 841 (8th Cir. 1996). Evidence of negligence and bad faith do not rise to the level of affirmative misconduct. *See Wang*, at 1277. Because the Tribes have made no showing of affirmative misconduct, whether or not the traditional elements of equitable estoppel are present need not be considered. *See id.*

**E. The Eleventh Amendment and Trade Secrets**

The Eleventh Amendment's guarantee of sovereign immunity to the states bars federal court adjudication of pendent state law claims against a non-consenting state defendant. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 120 (1984). In suits by Indian tribes, the states also enjoy Eleventh Amendment immunity. *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779-782 (1991); *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 268-69 (1997); *Seminole Tribe v. Florida*, 517 U.S. 44, 60-61 (1996). Because of this Eleventh Amendment bar, this Court may not decide the question of whether or to what extent the Tribes' gaming audits received by the State are nonpublic trade secret information under § 13.37 of the MGDPA. *See Santee Sioux Tribe v. State of Nebraska*, 121 F.3d 427, 432 (8th Cir. 1997); *5757 North Sheridan Rd. Condo Ass'n v. Local 727 of Intern. Broth. of Teamsters*, 864 F.Supp. 74, 76

(N.D. Ill. 1994) (holding that Eleventh Amendment barred claim in federal court against state official for alleged violations of state public records law).

Whether the audit reports are nonpublic trade secret information, and whether the State may release the audits under the MGDPA, are issues for the state district courts. In similar litigation, Ramsey County Judge Louise Dovre Bjorkman ruled that another tribe's financial audit data constitutes trade secret information under § 13.37 of the MGDPA and, as such, may not be released to the public. *See Prairie Island Indian Cmty. v. Minnesota Dept. of Public Safety*, No. C5-01-8766, slip op. at 19-24 (Ramsey County Ct. Apr. 16, 2002). As explained *supra*, § B, the MGDPA affords the Tribes a sufficient opportunity to pursue their rights in state district court.

Because the State's summary judgment motion is granted, no case remains in federal court. Therefore, the Tribe's Appeal of Judge Boylan's Order of February 21, 2002, is not reached.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) the Tribes' Motion for Summary Judgment [Doc. No. 25] is **DENIED**;

(2) the State's Motion for Summary Judgment [Doc. No. 17] is **GRANTED**;

(3) the Tribes' Appeal of the Order of February 21, 2002 [Doc. No. 42] is **DENIED as moot**;

(4) the entry of judgment will be stayed to allow the Tribes an opportunity to file an action in state court prior to public disclosure of the audit reports.

**LET JUDGMENT BE ENTERED ACCORDINGLY on July 1, 2002.**

BY THE COURT:

_____
ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: June 20, 2002